IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                                        CRIMINAL ACTION NO. 3:06-00143

BILL GREEN

**MEMORANDUM OPINION AND ORDER**

Based upon the Fourth Circuit Court of Appeals's decision in *United States v. Hadden*, 475 F.3d. 652 (4th Cir. 2007) and the United States Supreme Court's decision in *Kimbrough v. United States,* 552 U.S. 85 (2007)) the Court finds that it has the authority to vary from the U.S. Sentencing Guidelines during the re-sentencing of the defendant. The Court **ORDERS** that the defendant receive a sentence of 78 months imprisonment, 4 years supervised release, a fine of $1500 and a special assessment of $200.

**Background**

On June 27, 2006, the defendant was indicted on two counts of knowingly and intentionally distributing five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). The indictment alleged that Mr. Green had committed these crimes three years earlier – on June 19, 2003 and August 12, 2003. The defendant decided to put the government to its burden of proof on these crimes, and, on November 15, 2006, after a two-day trial, a jury found him guilty on both counts contained within the indictment.

The Court held a sentencing hearing on March 12, 2007, and on March 14, 2007, entered judgment sentencing him to a 151 month term of imprisonment, 8 years of supervised release, a

$1,500 fine and a $200 special assessment. The statutory ranges for penalties under 21 U.S.C. § 841 were driven by an enhancement sought by the government, pursuant to 21 U.S.C. § 851, and were unopposed by the defendant. As a result of the § 851 enhancement, the Court calculated a statutory minimum term of imprisonment of 10 years, and a statutory minimum term of supervised release of 8 years. The term of imprisonment and supervised release ultimately imposed by the Court were at the bottom of the applicable range recommended by the U.S. Sentencing Guidelines. *See* Statement of Reasons, March 14, 2007, (Doc. 93); U.S.S.G. §§ 2D1.1 (The fine was outside of the recommended Guideline range based on the Court's finding as to the defendant's ability to pay). The Court did not consider a departure or variance from these guidelines.

The defendant appealed his conviction. He argued that this Court erred by dismissing a juror over a lunch recess and proceeding with an 11 member jury. *See, United States v. Green*, No. 3:06-5225, slip op. (4th Cir. December 21, 2007). He also argued that his attorney should have been permitted to interview the remaining jurors to determine whether the dismissed juror was or would have been a hold-out for acquittal. *Id.* On December 21, 2007, the Fourth Circuit Court of Appeals denied the defendant's appeal in an unpublished *per curiam* opinion. *Id.* The appellate court found that this Court was permitted to proceed with an 11 member jury under Rule 23 of the Fed. R. Crim. P. and noted that the defendant had not objected to this procedure at trial. *Id.*

On May 20, 2008, the defendant benefitted from a retroactive amendment to the Sentencing Guidelines, meant to reduce the disparity between cocaine powder and cocaine base (a.k.a. "crack") offenders. Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) (Doc. 124). The application of this amendment resulted in a reduced base offense level and a corresponding decrease in his term of imprisonment from 151 to 121 months.

Uncontested at trial, during sentencing, or on appeal was the basis of the government's motion for § 851 enhancement. On March 26, 2009, the Court received a petition for *habeas corpus* relief filed pursuant to 28 U.S.C. § 2255. Therein, the defendant argued that the state court conviction on which his § 851 enhancement was based was inappropriate. While he did not dispute that he had been convicted of the crime used to support the § 851 enhancement – a state court felony drug charge arising from an incident on March 23, 2005 – he did challenge the validity of the conviction to support the enhancement. Though his crime had been committed prior to the defendant's trial and sentencing on the instant federal charges, it was committed *after* these instant crimes had been committed. Thus, the defendant argued, his state charge did not fit within the plain language of § 841 which provides for a sentencing enhancement when a "person commits such a violation after a prior conviction for a felony drug offense has become final." He further argued that his former counsel had been ineffective in failing to raise this issue at sentencing or on appeal.

In a response filed April 24, 2009, the government agreed that the conviction it had relied upon for the § 851 conviction was inappropriate for that purpose. The government acknowledged that the defendant had been prejudiced by the error as it had resulted in the Court's doubling of his term of supervised release. The government argued, however, that the defendant was not prejudiced by his term of imprisonment – which was within the recommended guideline range.

On February 11, 2010, Magistrate Judge Taylor issued Findings and Recommendations. Based largely on the United States' position that it did not oppose the defendant's motion for § 2255 relief, Judge Taylor recommended that Mr. Green be brought before this court for re-sentencing. I adopted this recommendation on February 18, 2010, granted the defendant's motion for *habeas* relief and set a date for re-sentencing.

Following the grant of his *habeas* motion, the defendant filed a sentencing memorandum wherein, along with other arguments, he sought a downward variance based on the crack/powder cocaine sentencing disparity. The Court recognized that at the time of his original sentence such a variance was not permitted. However, in the time between that original sentence and the defendant's re-sentencing the U.S. Supreme Court had decided *Kimbrough v. United States,* 552 U.S. 85 (2007), which explicitly allowed for such a variance. This Court directed the government to respond to the defendant's sentencing memorandum and indicate whether or not it agreed that the Court could consider a departure or variance at sentencing. The government responded and argued that the Court should not impose a new term of imprisonment, as the defendant's original term (as modified by the retroactive amendment to the Sentencing Guidelines) was lawful and within the sentencing guideline range. The government did not present clear authority that the Court was not permitted to consider a departure or variance based on the crack/cocaine powder disparity at sentencing.

**Analysis**

**I.    The Court's Authority to Modify the Defendant's Sentence Through Re-Sentencing**

A court may modify an defendant's sentence only under limited circumstances. 18 U.S.C. § 3582. Of relevance to this case, a court is permitted to do so when another statute expressly permits a new sentence. *Id.* at § 3582(b). The statute providing for *habeas corpus* relief states that if a court finds that the judgment against the defendant was rendered in error and is subject to collateral attack, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255. This provision is generally recognized as granting the district court "broad and flexible

power" to "fashion an appropriate remedy." *United States v. Hillary*, 106 F.3d 1170, 1171-72 (4th Cir. 1997).

The Fourth Circuit Court of Appeals has recognized four separate forms of relief set forth by 28 U.S.C. § 2255. In addition to the mandatory vacatur of the prisoner's unlawful sentence, upon grant of a petition for *habeas corpus*, the statute allows for one of the following remedies: "discharge the prisoner, (2) grant the prisoner a new trial, (3) resentence the prisoner, or (4) correct the prisoner's sentence." *United States v. Hadden*, 475 F.3d 652, 667 (4th Cir. 2007) (internal brackets and quotations omitted). Because each of these different terms appears in the statute, each must refer to a different concept – and a different type of procedure. *Id.* (citing *Cunningham v. Scibana*, 259 F.3d 303, 308 (4th Cir. 2001) ("The use of different terms within related statutes generally implies that different meanings were intended.")); *see also,* 2A Norman J. Singer and J.D. Shambie Singer, 2A Sutherland Statutes and Statutory Construction § 46:6 (7th ed. 2007) ("courts do not construe different terms within the same statute to embody the same meaning.").

In *Hadden*, the defendant had been tried and convicted of firearm and drug offenses in violation of 21 U.S.C. 841(a)(1) (drug counts) and 18 U.S.C. § 924(c) (firearm count) *Id.* at 657. The district court judge sentenced him to 168 months on the drug counts (to run concurrently) and 60 months on the firearm count (to run consecutively) for a total sentence of 228 months. Hadden appealed his convictions, but the district court's decision was affirmed. *Id.* Following the denial of his appeal, Hadden successfully filed a § 2255 petition based on his trial counsel's failure to raise a U.S. Supreme Court precedent, which he contended would have prevented his conviction for the firearm offense. The district court agreed, vacated his sentence and amended the judgment to include a term of imprisonment on the drug counts only – 168 months. The district court did not

hold a hearing for re-sentencing or consider arguments for a variance or departure from the original sentence. Hadden appealed this corrected sentence arguing that he was entitled to full re-sentencing and that the district court's corrected sentence was erroneous under the Supreme Court precedent of *U.S. v. Booker*, 543 U.S. 220 (2005).

The Fourth Circuit panel analyzing the case found that a correction of the sentence without a full re-resentencing hearing was entirely appropriate under the statute, which allows for both the correction of a sentence and re-sentencing. 475 F.3d at 668. It also found, however, that the district court had committed error in correcting the defendant's sentence without regard to *Booker*. *Id.* at 670-71 ("We have little trouble concluding that there was Sixth Amendment error here, the error was plain, and it affected Hadden's substantial rights."). It ultimately declined to recognize the error, but its decision that error occurred is significant in the instant case. The *Booker* decision was not rendered until the pendency of the defendant's appeal of his *corrected* sentence. *Id.* at 659.

The Fourth Circuit Court of Appeals decision that *Booker* should have applied to the defendant's corrected sentence was based on its decision in a separate part of the *Hadden* opinion, concerning the nature of *habeas* relief. There, it held that a correction or re-sentencing pursuant to a successful *habeas* appeal is a "hybrid order that is both part of the petitioner's § 2255 proceeding and part of his criminal case." *Id.* at 664. The *Hadden* court recognized that a major function of the re-sentencing or correction of sentence was to formally complete the § 2255 proceeding and to that extent it is formally part of that proceeding. *Id.* The court also held, however, that "[t]o the extent that the [district court's] order vacates the original sentence and enters a new criminal sentence. . .the order is part of the prisoner's criminal case." *Id.*

In this case, the Court has made the opposite decision from the district court in *Hadden*. Rather than simply correct the defendant's sentence to make it comply with the law, the Court determined that it would fully re-sentence Mr. Green. In doing so it has complied with each of the procedures set forth in Fed. R. Crim. P. 32, including the following: 1) advising the parties of it's intention to rely on the information within the prior presentence report[1]; 2) indicating its consideration of a departure or variance prior to the re-sentencing hearing; 3) accepting new legal argument from each of the parties; and 4) allowing the defendant an opportunity to allocute. While this Court had the option of simply correcting the defendant's sentence, to make it comport with the law, it's choice to hold a full re-sentencing is also within its discretion. *See generally, Hadden*, 475 F.3d 652; *see also*, *Hillary*, 106 F.3d 1170, 1172 (holding that a district court is authorized to conduct a re-sentencing in awarding relief pursuant to § 2255).

In addition to being authorized to do more than simply correct the defendant's sentence, the Court is required to follow sentencing practice as it stands at the time of re-sentencing – even if the decisions enunciating the correct practice have not been made retroactive. The decision in *Hadden* clearly illustrates the principle. Just as the district court in that case erred by sentencing the defendant in contradiction of *Booker's* Sixth Amendment analysis, this Court would be in error if

---

[1]Pursuant to Fed. R. Crim P. 32, "[t]he probation officer must conduct a presentence investigation and submit a report to the court before it imposes sentence unless. . . the court finds that information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record." The Court notified the parties that it would not require a new presentence report. At the hearing the Court explained that the information within the prior presentence report would be sufficient for the necessary considerations and that a new presentence report would not reveal significant relevant information not contained within the first, as the defendant had been incarcerated since the time of his original sentencing hearing.

it did not comply with Supreme Court precedents established prior to the time of Mr. Green's re-sentence.[2]

## II. The Defendant Is Entitled to Variance Based on the U.S. Supreme Court's Holding in *Kimbrough*

In the last ten years, the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and continuing through *Booker* and more recently *Kimbrough* and *Spears v. United States*, 129 S.Ct. 840 (2009,) has significantly changed the manner in which defendants are sentenced in federal courts and the discretion district court judges have in imposing sentence. At the time of Green's initial sentencing, the U.S. Supreme Court had decided *Booker,* and the Fourth Circuit Court of Appeals had decided the cases of *United States v. Eura*, 440 F.3d 625 (2006) and *United States v. Kimbrough*, 174 Fed. Appx. 798 (4th Cir. 2006) (unpublished). The Supreme Court had not yet granted *certiorari,* much less rendered an opinion, on either *Eura* or *Kimbrough* and thus the circuit court decisions were binding upon this Court.

In *Apprendi,* the U.S. Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. To allow otherwise would be a violation of the Sixth Amendment. *Id.* This decision raised questions about the continuing validity of the U.S. Sentencing Guidelines, which relied on the sentencing judge's determination of specific facts, beyond those found by the jury, to enhance or decrease a defendant's sentence within the statutory range. Although the Sentencing Guidelines were not statutory (being passed by the U.S. Sentencing

---

[2] While the *Hadden* court ultimately decided not to notice the district court's constitutional error, this Court's role is to adhere to the Constitution, not to predict which errors the appeals court will decline to correct.

Commission rather than by Congress) they were mandatory and thus had the force and effect of law. *Booker*, 543 U.S. at 234 (citing *Mistretta v. United States,* 488 U.S. 361 (1989); *Stinson v. United States*, 508 U.S. 36 (1993)). In *Booker,* the Court held that the mandatory nature of the Guidelines violated the substance of the Sixth Amendment. *Id.* at 237. As a remedy, the Court excised the portions of the federal sentencing statute pronouncing the Guidelines mandatory, and instructed lower court judges to view them as "advisory." *Id.* at 259-65.

Although *Booker* had clearly rendered the Sentencing Guidelines advisory, it was unclear how far and for what reasons district courts could vary from the guideline recommendations. In the spring of 2006, the Fourth Circuit Court of Appeals considered two cases in which the district court judge had varied from the Sentencing Guidelines because of a disagreement with Congress's policy decision to impose a 100:1 ratio for sentencing crack offenders as compared to powder cocaine offenders.[3] *See United States v. Eura*, 440 F.3d 625 (4th Cir. 2006); *United States v. Kimbrough*, 174 Fed. Appx. 798 (4th Cir. 2006) (unpublished). The Fourth Circuit held in *Eura,* that a district court did not have the authority to reject the policy decision made by Congress (and reflected in the Guidelines) to impose the 100:1 sentencing ratio. 440 F.3d. 630-34. While *Apprendi* and *Booker* recognized a Sixth Amendment violation when a law required a court to impose a higher sentence based on judge-determined facts, they did not explicitly authorize a judge to reject policy decisions made by Congress. The *Eura* court determined that allowing such a rejection of Congressional policy would lead to unwarranted sentencing disparities. *Id.* at 633 to 34. In *Kimbrough*, the Fourth

---

[3] The 100:1 ratio was imposed upon the drug weight. For instance, a defendant who sold 5 grams of crack would be subjected to the same sentence as a defendant who sold 500 grams of cocaine powder. The ratio led to actual sentences 3 to 6 times longer for crack offenses than cocaine powder offenses.

Circuit Court of Appeals took the *Eura* analysis one step further, declaring that "a sentence that is outside the guideline range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses." *United States v. Kimbrough*, 174 Fed. Appx. at 799 (4th Cir. 2006).

The above analysis reflects the state of the law at the time Mr. Green was originally sentenced, on March 12, 2007. Based on binding Fourth Circuit precedent at the time, the Court was not permitted to consider any variance from the guidelines based on its own opinion that the 100:1 ratio overstated the differences and degree of culpability for crack cocaine versus powder offenses.

A few months after Mr. Green's sentencing the U.S. Supreme Court decided an appeal of the Fourth Circuit's decision in *Kimbrough*. The Supreme Court's opinion soundly rejected the circuit court's analysis in *Kimbrough* and reversed the decision in that case as well as *Eura*. *Id.* at 112; *Eura v. United States*, 552 U.S. 1090 (2008). The Court held that a district court would be permitted to vary "when sentencing a particular defendant [based on a decision] that the crack/powder disparity yields a sentence 'greater than necessary' [to achieve the purposes of sentencing] even in a mine-run case." *Id.* at 575. In a case decided approximately one year later, the Supreme Court further clarified that a district court was permitted to impose its own categorical ratio for crack and powder cocaine offenses different from the Congressional 100:1 ratio. *Spears v. United States*, 129 S.Ct. 840 (2009).

Following the Supreme Court's decision in *Kimbrough* this Court changed its sentencing practice and began to consider a variance in each sentencing of a crack cocaine offender, based on the disparity between the recommended Guideline sentences for crack offenses and powder cocaine offenses. Frequently, though not in every case, this Court imposes a 20:1 ratio to reflect its opinion

of the differences between crack cocaine and powder cocaine offenses. This was the Court's sentencing practice at the time of Mr. Green's re-sentencing hearing and remains so today. Because the re-sentencing of Mr. Green is a continuation of the defendant's original criminal proceedings, it is not necessary for the Court to consider the retroactivity of precedents such as *Kimbrough*. *See Hadden* 475 F.3d at 664. It will adhere to its usual sentencing practice and comply with the applicable sentencing law as it currently stands.

Mr. Green was sentenced for distribution of crack cocaine and as such, the Court finds it appropriate to consider a variance from the Guideline range based on the disparity in the crack/powder Guidelines. The Court recognizes that by imposing its common 20:1 ratio Mr. Green would be subject to a base offense level of 26 for his violation of two counts of 21 U.S.C. § 841. This base offense level, combined with the defendant's criminal history category of III, corresponds to a Guideline range of 78 to 97 months imprisonment.

The Court hereby imposes sentence of 78 months, equivalent to a 43 month reduction from the defendant's original sentence. The Court also modifies the defendant's supervised release term, to accord with the Sentencing Guideline range and the correct statutory range. The new term is four years. The Court also reimposes a fine of $1500 and the special assessment of $200.

**Conclusion**

For the reasons explained above, the Court **FINDS** that it has the authority to consider a variance based on the crack/powder cocaine disparity reflected in the U.S. Sentencing Guidelines at Mr. Green's May 3, 2010 re-sentencing. The Court **ORDERS** that the defendant receive a sentence of 78 months imprisonment, 4 years supervised release, a fine of $1500 and a special assessment of $200. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals' Service.

ENTER: May 11, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE